IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DESMOND CUNNINGHAM                                                    PLAINTIFF

v.                                                   CAUSE NO: 3:24-CV-381-SA-RP

PENTAGON FEDERAL CREDIT UNION, *et al*.                              DEFENDANTS

ORDER AND MEMORANDUM OPINION

Desmond Cunningham, who is proceeding *pro se*, initiated this litigation by filing his Complaint [2] against Pentagon Federal Credit Union in the Circuit Court of Desoto County, Mississippi. Pentagon removed the case to this Court on the basis of federal question jurisdiction. After being directed by the Court, Cunningham filed his Second Amended Complaint [105] on June 20, 2025. The named Defendants in the Second Amended Complaint [105] are Pentagon; National Title Insurance of New York ("National Title"); ServiceLink, LLC; and Mortgage Electronic Registration Systems, Inc. ("MERS"). Pentagon and MERS jointly filed a Motion to Dismiss [109], National Title filed its own Motion to Dismiss [111], and ServiceLink filed a Motion for Summary Judgment [137]. There are also various other Motions [123, 125, 126, 132, 142] pending at this time.

Having considered the parties' extensive filings, along with the applicable authorities, the Court is prepared to rule.

*Relevant Background*

Generally speaking, this case concerns allegations of misconduct in connection with Cunningham's refinancing of a loan backed by real property located in Desoto County, Mississippi. The Second Amended Complaint [105] is a 37-page document (32 of which are substantive) that is at times rather difficult to follow.

Notably, in a previous Order [104], the Court provided Cunningham with an opportunity to clarify his allegations and more succinctly state his claims. In doing so, the Court specifically cautioned Cunningham that "the failure to comply with the applicable pleading standards will result in dismissal of his claims *with prejudice*." [104] at p. 6. The Second Amended Complaint [105] includes many of the same confusing explanations as the previous iterations. *See* [2], [13]. Nonetheless, the Court has made every effort to parse out the relevant facts from Cunningham's Second Amended Complaint [105] and the attachments thereto.

With that caveat, the Court turns to the alleged facts. On October 23, 2023, Cunningham refinanced his home loan with Pentagon. According to Cunningham, that transaction was "guaranteed by the Department of Veteran Affairs." [105] at p. 5. He executed a note in the principal amount of $360,000 and a deed of trust secured by his property. The deed of trust lists Pentagon as the lender and further provides that "MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." *Id*., Ex. 13 at p. 4. The loan closing took place at Cunningham's home and "was conducted by a Notary Public contracted by Defendant ServiceLink, which was contracted to perform a title search in compliance with VA regulations." [105] at p. 5-6. The transaction "also included a title policy issued by Defendant National Title[.]" *Id*. at p. 7.

Cunningham alleges that a few days later, on or about November 5, 2023, he discovered that a tax lien had been placed on his property "due to alleged tax debt from Desoto County[.]" *Id*. Cunningham avers that he subsequently redeemed those taxes, but he contends that, in preparing for the loan closing, ServiceLink "failed to properly conduct the title search and ensure a clear title as required." *Id*.

In August 2024, Pentagon sent Cunningham a letter specifically advising him that his loan

was in default and that the default could be cured by a payment of $2,627.00.

Cunningham responded to Pentagon via letter dated September 23, 2024. In that letter, Cunningham stated that a review of the closing documents "revealed a material alteration to the noteholder information on the deed of trust associated with my mortgage account. This alteration was made after the deed of trust had been authenticated and sealed, without my consent. . . This unauthorized change invalidates the deed of trust and any associated lien, as the original contract is now compromised due to the material alteration." [105], Ex. 5 at p. 2. He continues on in that letter to allege violations of Mississippi statutory law and the Fair Debt Collections Practices Act ("FDCPA") based upon attempts to collect an invalid debt.

For reference, the alteration to the deed to trust to which Cunningham referred is the return address on the first page. The deed of trust initially indicated as follows:

> When recorded, return to:
> PenFed Vault at Iron Mountain
> 4117 Pinnacle Point Drive
> Suite 100
> Dallas, TX 75211

[105], Ex. 13 at p. 3.

That language on the deed of trust was crossed through. Below, it was stamped on the deed of trust that it should instead be recorded and returned to ServiceLink.

In a response letter dated October 5, 2024, Pentagon denied Cunningham's allegation as to the invalidity of the loan. The letter went on to reiterate Cunningham's delinquency. But in another letter dated November 6, 2024, Pentagon advised Cunningham of an error:

> The purpose of this letter is to provide a response to your written notice of error received on 9/4/2024. After conducting a reasonable investigation, [Pentagon] has determined that an error occurred. We discovered that the delinquent taxes which were sold to a third party before closing remained outstanding at the time of closing. We determined that you redeemed the taxes in the amount of $357.39.

> Although the title company did not identify this at the time of closing, this does not void the title policy in any way. As a courtesy, they have sent a concession for that amount to you via wire transfer[.]

[105], Ex. 9 at p. 2.

Cunningham notes this tax issue without making a significant argument pertaining to it, but he goes on to contend that the "unauthorized alteration renders the Deed of Trust void and unenforceable under Mississippi Code §§ 75-3-406 and 75-3-407, and the common law doctrine of material alteration." [105] at p. 13. He asserts that the altered deed of trust constitutes a cloud on his title.

Cunningham also takes issue with Pentagon pledging his note "as collateral under [a] Borrower-in-Custody (BIC) arrangement and receiv[ing] credit from the Federal Reserve." *Id.* at p. 11-12. According to Cunningham, Pentagon separately pledging his note as collateral somehow altogether extinguished Cunningham's obligation to make payments to Pentagon under the note.

In the Second Amended Complaint [105], Cunningham asserts 13 separate claims, including violations of the FDCPA, fraud, breach of contract, and negligence, among others. He seeks a declaratory judgment and removal of cloud on title, in addition to compensatory, statutory, and punitive damages.

Pentagon, MERS, National Title, and ServiceLink now seek dismissal of the respective claims asserted against them. Pentagon, MERS, and National Title seek dismissal pursuant to Rule 12(b)(6) for failure to state a claim, whereas ServiceLink seeks summary judgment pursuant to Rule 56.

*Analysis and Discussion*

The Court will address each of the asserted causes of action and purported bases for dismissal in turn.

4

I.  *Declaratory Relief (Count I)*

Cunningham asserts Count One against all Defendants and "seeks a declaration from this Court that the Note has been fully satisfied and that no enforceable obligation remains due under it . . . [and] a declaration that the Deed of Trust . . . is void as a security instrument as a matter of law due to its fraudulent and unauthorized material alteration by Defendants, and due to the unauthorized practice of law in its execution." [105] at p. 14.

Beginning with the requested relief as to the promissory note, Cunningham seemingly avers that Pentagon pledging the promissory note as collateral as part of a borrower-in-custody agreement to receive credit from the Federal Reserve somehow extinguished *his* obligation to make payments under the note. In their Joint Memorandum [110], Pentagon and MERS direct the Court's attention to a decision from the District Court for the Eastern District of Virginia, wherein that court explained that "securitization does not relieve a borrower of her mortgage obligations (e.g., paying the mortgage) or extinguish a lender's right to foreclose on a secured property." *Suggs v. M&T Bank*, 230 F. Supp. 3d 458, 463 (E.D. Va. 2017) (citation omitted).

In his Response Memorandum [114], Cunningham asserts that "[D]efendants' broad 'securitization' cases are distinguishable as they do not address OC-10's specific extinguishment mechanisms. Defendants also present a self-defeating legal contradiction by claiming monetization 'does not discharge Plaintiff's debt' while asserting full enforcement rights." [114] at p. 4 (citations omitted).

Cunningham's argument is a non-starter. His purported distinction between the case relied upon by the Defendants and the present case is unclear. He apparently contends that he is completely absolved from any obligation under the note but states no coherent legal theory as to

how such is the case. The Court squarely rejects his argument.

Next, the Court looks to Cunningham's contention that the deed of trust is void. "The material alteration of a deed is an affirmative defense that must be proved by clear and convincing evidence." *Congress Street Props., LLC v. BMR Funding, LLC*, 84 So.3d 25, 27 (Miss. Ct. App. 2012) (citing *Tate v. Rouse*, 156 So. 2d 217, 219 (Miss. 1963)). "[T]o render the deed of trust void, the alteration must be the result of fraud and not an honest mistake or omission." *Id.* (citing *Mullins v. Merchandise Sales Co.*, 192 So. 2d 700, 704 (Miss. 1966)).

The Second Amended Complaint [105] is wholly devoid of any factual allegations that the alteration of the return address is material or that it was the result of fraud. There is no allegation that the deed of trust was not recorded or that the alteration in any way impacted Cunningham's obligation to make payments under his note. Cunningham's argument is, stated simply, nonsensical and unavailing.

Cunningham also contends that the deed of trust is void because of purported "unauthorized practice of law in its execution." [105] at p. 14. Specifically, the Second Amended Complaint [105] alleges that the notary public involved in the loan closing "advised Plaintiff as to the nature and purpose of the documents and security instruments Plaintiff was signing, including the Deed of Trust. Specifically, the Notary Public informed Plaintiff that by signing the Deed of Trust, he was providing collateral for the loan and explained the implications of defaulting on the loan and the lender's ability to foreclose." *Id.* at p. 6. According to Cunningham, this advice constituted the unauthorized practice of law and invalidated the deed of trust that he signed.

As with Cunningham's other underlying theories to support his request for declaratory relief, this argument fails. Cunningham has provided no causal link as to how the unauthorized practice of law (if any) would implicate his obligations under the note. Nor has he alleged that he

received any advice that was not accurate. There is simply no legally viable claim.

The Court sees no need to address this claim any further. The crux of Cunningham's theory of the case appears to be that, despite making no allegation that he has fulfilled his obligation under the promissory note, he is absolved from any responsibility to do so because of Pentagon's using the note as collateral and/or the changing of a return address on the deed of trust. He has provided no relevant authority to support this position. His request for declaratory relief is ripe for dismissal. *See*, *e.g.*, *Smitherman v. Bayview Loan Serv.*, LLC, 727 F. App'x 787, 792 (5th Cir. 2018) (citing *Harris Cnty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015)) ("Accordingly, because [the plaintiff] asserted no viable cause of action against [the defendant], the district court properly dismissed his requests for declaratory relief.").

The Second Amended Complaint [105] fails to state a viable claim for declaratory judgment. Count I is DISMISSED.[1]

## II. Fraud (Count II)

In Count II, Cunningham alleges that Pentagon, MERS, and ServiceLink "engaged in a scheme to defraud [him] related to the execution, integrity, and subsequent alteration of the Deed of Trust, as well as the status of the underlying debt." [105] at p. 15.

Cunningham contends that "ServiceLink, through the Notary Public, falsely represented that the closing process and the documents being signed were proper and legally sound. The Notary Public implicitly represented that she was legally authorized to provide advice regarding the Deed of Trust and conduct the closing." *Id*. As to Pentagon and MERS, Cunningham alleges concealment of the "material alteration of the Deed of Trust" that "fundamentally changed the

---

[1] In addition to Cunningham having alleged no viable claim concerning the note and the deed of trust, National Title is not a party to either of those instruments. Therefore, even if the claim had any viability, Cunningham could not proceed against National Title.

destination of the official recorded security instrument, a material fact affecting Plaintiff's interests and the integrity of the security instrument." *Id*. at p.15-16. He further contends that Pentagon "misrepresented the status of [his] debt by continuing collection efforts and reporting delinquency to the VA and Plaintiff directly, despite the monetization of Plaintiff's Note[.]" *Id*. at p. 16. He goes on to allege that MERS, "as the designated nominee and mortgagee of record," had ongoing "administrative and custodial obligations" with which it failed to comply. *Id*. at p. 17.

The Mississippi Supreme Court has articulated the elements of fraud as follows:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

*Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999) (citing *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984)).

Importantly, the "essential elements of fraud must be pled with particularity." *Archer v. Harlow's Casino Resort & Spa*, 395 So. 3d 71, 74 (Miss. Ct. App. 2024) (citing *State v. Bayer Corp.*, 32 So. 3d 496, 501 (Miss. 2010)).

The allegations in Cunningham's Second Amended Complaint [105] fall well below this threshold. As noted previously, he asserts (in conclusory fashion) that the Defendants engaged in a scheme to defraud him in relation to the "execution, integrity, and subsequent alteration of the Deed of Trust, as well as the status of the underlying debt." [105] at p. 15. The problem with this assertion is that he has alleged no underlying facts to support it. Cunningham does not assert facts to support each of the essential elements of a fraud claim. For instance, he points to no *false* or *material* assertion that was made to him. While he points to statements that were made to him during the loan closing and the change in return address on the deed of trust, he has not alleged

that those representations were false *or* material.

He also contends that Pentagon made a misrepresentation as to the status of his debt "by continuing collection efforts and reporting delinquency to the VA and Plaintiff directly[.]" *Id.* at p. 16. This argument is inherently flawed, though, because Cunningham has pointed to nothing to illustrate that the debt was invalid. In other words, he has not plausibly alleged any facts to support that this was a misrepresentation at all.

Cunningham's fraud claim in the Second Amended Complaint [105] is inadequately pled and lacks factual support. Count II is hereby DISMISSED.

   III.   *Violations of Mississippi Code Sections 75-3-406 and 75-3407 (Counts III and IV)*

In Counts III and IV, Cunningham asserts violations of Mississippi statutory law. In Count III, he alleges that Pentagon and MERS violated Section 75-3-406, which in pertinent part provides:

> (a)   A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded form asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

Miss. Code Ann. § 75-3-406(a).

In Count IV, Cunningham alleges that Pentagon and ServiceLink violated Section 75-3-407. It provides in pertinent part:

> (a)   "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.
>
> (b)   Except as provided in subsection (c), an alteration fraudulently discharges a party whose obligation is affected by the alteration unless that party assents or is

9

> precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.

*Id*. at § 75-3-407(a), (b).

Pentagon and MERS contend that Cunningham's claims pursuant to these sections are flawed because those statutory sections are altogether inapplicable. For reference, these sections are contained within Chapter 3 of the Uniform Commercial Code, which applies only to "negotiable instruments." *Id*. at § 75-3-102. The Code defines "negotiable instrument" as follows:

> (a)　　Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

*Id*. at § 75-3-104(a).[2]

The deed of trust that Cunningham contends was illegally altered is not a "negotiable instrument" as defined by the UCC because it is not an unconditional promise to pay and is not payable on demand or at a definite time as required in order to satisfy the statutory definition. Other cases support this conclusion. *See*, *e.g.*, *Robbins v. Walker*, 2008 WL 4635374, at *6 (S.D.

---

[2] Notably, the statute makes clear that the term "instrument" also "means a negotiable instrument." MISS. CODE ANN. § 75-3-104(b). Thus, the terms are interchangeable in this context.

Miss. Oct. 17, 2008) (noting that "the deed of trust is not itself a negotiable instrument"); *Ocwen Loan Serv., LLC v. Branaman*, 544 F. Supp. 2d 645, 648 n. 3 (N.D. Miss. 2008) (noting that the plaintiff conceded that "the holder in due course status only applies to negotiable instruments such as the promissory note at issue here, not the deed of trust.").

Even if these statutory sections applied to a deed of trust, the allegations of Cunningham's Second Amended Complaint [105] do not allege an "alteration" as that term is defined in Section 75-3-407(a). As noted above, an "alteration" only occurs when there is an "unauthorized change in an instrument that purports to modify in any respect *the obligation of a party*" or "an unauthorized addition of words or numbers or other change to an incomplete instrument *relating to the obligation of a party*." MISS. CODE ANN. § 75-3-407(a) (emphasis added).

Cunningham's contention—that the return address was improperly modified without his consent—does not concern the obligation of a party. Thus, the alleged facts do not state a viable violation of either statutory section.

Count III, which is asserted against Pentagon and MERS, is DISMISSED. Count IV, which is asserted against Pentagon and ServiceLink, is likewise DISMISSED.

IV.     *Breach of Title Policy (Count V)*

In Count V, Cunningham alleges that National Title "issued a title policy in connection with Plaintiff's refinance transaction" and that National Title "failed to enforce its own alteration provisions, and breached its obligations under the title policy by allowing or failing to prevent the unauthorized and material alteration of the Deed of Trust." [105] at p. 21.

In seeking dismissal, National Title first points out that Cunningham is not a party to the title insurance policy that it issued to Pentagon. Nonetheless, even assuming Cunningham has a right to recover under the policy, he has not alleged an actual breach of the policy. As phrased by

National Title, "[t]he Plaintiff does not allege that the underlying title to the Subject Property is defective. . . Even if the Court determines that the Deed of Trust is void, the Plaintiff is not entitled to recover from National Title." [112] at p. 6.

The Court agrees. Cunningham has not articulated any plausible theory as to how he would be able to recover from National Title as the issuer of a title insurance policy. Count V is hereby DISMISSED.

## V.      Conversion (Count VI)

In Count VI, Cunningham asserts a conversion claim against Pentagon, alleging that it "monetized Plaintiff's Note through a Federal Reserve credit transaction, specifically pledging Plaintiff's Note as collateral under a Borrower-in-Custody (BIC) arrangement and receiving credit from the Federal Reserve, thereby extinguishing the obligation." [105] at p. 22. He contends that Pentagon's "refusal to reconcile the paid Note and release the lien constitutes unlawful conversion[.]" *Id*.

This argument is nonsensical. Cunningham has pointed to no authority indicating that a lender's pledging of a note as collateral somehow extinguishes a borrower's obligation to make payments. Because the Court has already addressed this point in more detail above, it will not delve further into it at this point. Suffice it to say, Cunningham has not alleged a viable conversion claim. Count VI is DISMISSED.

## VI.     Breach of Fiduciary Duty (Count VII)

Cunningham next asserts a claim for breach of fiduciary duty against Pentagon, asserting that it "had an affirmative obligation to safeguard the security instrument, apply proceeds appropriately, and provide transparent and timely reconciliation of all actions taken under the BIC arrangement." *Id*. at p. 23.

12

"A fiduciary relationship is a broad term embracing technical fiduciary relations and informal relations which exist wherever one person trusts in or relies upon another." *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 994 (Miss. 2006) (citing *Burgess v. Bankplus*, 830 So. 2d 1223, 1227 (Miss. 2002)) (additional citation omitted). Typically, the mere existence of a contractual arrangement does not give rise to fiduciary duties. *Id*. at 994-95 (citation omitted). But a fiduciary relationship may arise under the following circumstances:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where on party has dominion and control over the other.

*Id*. at 995 (quoting *University Nursing Assocs., PLLC v. Phillips*, 842 So. 2d 1270, 1274 (Miss. 2003)).

None of these circumstances exist here. Cunnigham has alleged no facts that would give rise to Pentagon owing him a fiduciary duty. Rather, the allegations of the Second Amended Complaint [105] illustrate only a typical contractual relationship between them. And even if a fiduciary relationship did exist between them, Cunningham has not plausibly alleged that Pentagon actually violated any fiduciary duty. Count VII is hereby DISMISSED.

### VII.    *Violation of the FDCPA (Count VIII)*

In Count VIII, Cunningham alleges that Pentagon's efforts to collect the debt under the note constituted a violation of the FDCPA. He contends that Pentagon "attempting to collect a debt that Plaintiff alleges was already satisfied or in default upon transfer of the Note, and its subsequent actions of reporting delinquency to third parties and sending collection letters after Plaintiff's explicit dispute and validation request, subject it to liability under the FDCPA." [105] at p. 24.

The provision of the FDCPA that creates a private right of action is limited to "debt

collectors." *See* 15 U.S.C. § 1692k(a) ("any *debt collector* who fails to comply with any provision of this subchapter with respect to any person is liable . . .") (emphasis added). The FDCPA defines "debt collector" in pertinent part as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*.

15 U.S.C. § 1692a(6) (emphasis added).

As the statutory definition makes clear, an entity attempting to collect a debt only becomes a "debt collector" for FDCPA purposes when attempting to collect a debt on behalf of another. The United States Supreme Court has made clear that an entity that attempts to collect a debt on its own behalf falls outside the scope of the FDCPA. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79- 83-90, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017).

Here, Pentagon was the originator of the loan and therefore was simply attempting to collect on its own behalf. The Second Amended Complaint [105] specifically alleges as much. *See* [105] at p. 5 ("Plaintiff refinanced his property . . . with Defendant [Pentagon].").[3]

Cunningham has not stated a viable FDCPA claim against Pentagon. Count VIII is hereby DISMISSED.

VIII. *Breach of Contract (Count IX)*

In Count IX, Cunningham alleges that he "entered into a contractual agreement with Defendant ServiceLink for the provision of closing and title services, including a title search, in

---

[3] Cunningham relies on a general notice in a letter that Pentagon sent him stating that "in some circumstances we may be acting as a debt collector." *See* [105], Ex. 4 at p. 3. He provides no authority indicating that the existence of this form language brings Pentagon's actions in this case into the parameters of the FDCPA when it is not attempting to collect a debt on behalf of another. Cunningham's argument is squarely rejected.

relation to the refinance transaction on October 23, 2023." *Id.* at p. 26. He contends that ServiceLink breached its contractual obligation by "failing to properly conduct the title search and by failing to identify and disclose the existing tax lien on Plaintiff's property prior to closing[.]" *Id.*

"A breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Moon River Foods, Inc. v. Red Chamber Co.*, 2024 WL 4046589, at *2 (N.D. Miss. Sept. 4, 2024) (citation and internal quotation marks omitted). Here, there is nothing to indicate the existence of a contract between Cunningham and ServiceLink. ServiceLink attached to its Motion [138] a declaration signed under penalty of perjury by Edward George, who holds a vice president position with the company. In the declaration, George explains that ServiceLink did not contract with Cunningham whatsoever in this transaction but, rather, simply contracted with Pentagon to "handle[] the issuance of title insurance and coordinate[] the refinance closing." [138], Ex. 2 at p. 2.

Even assuming that a contract between Cunningham and ServiceLink existed (or that Cunningham was a third-party beneficiary to Pentagon and ServiceLink's contract), he has not adequately alleged a breach. As ServiceLink points out, Cunningham "does not claim that he was not aware of the non-payment of his taxes. Nor can he. . . These taxes were [Cunningham's] own obligation. It was not a third-party lien. It was a lien caused by [Cunningham's] own inaction." [138] at p. 10. As this explanation makes clear, Cunningham's argument is seemingly that ServiceLink commit a breach when it failed to advise him that his property was not tax-exempt and that he was therefore required to pay the applicable taxes. He has identified no authority indicating that he can prevail on such a theory under these facts.

Further, the Court notes that Cunningham has not alleged any damages related to this

purported breach for which he has not already been made whole. In the Second Amended Complaint [105], Cunningham alleges that he "suffered damages, including the financial burden of the undisclosed tax lien and related costs." [105] at p. 27. However, ServiceLink reimbursed Cunningham for the taxes he paid in the amount of $357.39. *See* [137], Ex. 2 at p. 2.[4]

Ultimately, Cunningham has no viable breach of contract claim based on the facts as alleged. Count IX is hereby DISMISSED.

IX. *Negligence (Count X)*

Cunningham asserts a negligence claim against ServiceLink, alleging that it "owed a duty of care to [him] to perform its title search and closing services with reasonable diligence and competence[.]" [105] at p. 27. He contends that ServiceLink breached this duty by negligently failing to disclose the tax lien and that, as a result, he "suffered damages, including but not limited to the financial burden of the undisclosed tax lien, a clouded title, and the impairment of his property rights." *Id*. at p. 27-28. He also alleges that ServiceLink was negligent "by conducting the closing through an agent engaging in the unauthorized practice of law." *Id*. at p. 27.

"[T]o prevail on a claim of negligence, the 'plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury.'" *Sanderson*

---

[4] Cunningham attached to his Response [139] an affidavit entitled "Affidavit of Plaintiff Desmond Cunningham in Support of Motion for Relief Under FRCP 56(d)." [139], Ex. 1. However, in reviewing that document, the Court is unpersuaded. In fact, the affidavit does little more than indicate Cunningham's disapproval of the entry of a judgment against him. For instance, he indicates that he "need[s] to obtain the actual contract between ServiceLink and [Pentagon]" to evaluate his third-party beneficiary status. [139], Ex. 1 at p. 3. He also states that he needs to obtain "financing statements, transmittal forms, certification forms, calculation worksheets, transaction records, ledger journal entries, power of attorney agreements, agency agreements, authorization lists, audit reports, verification records, disbursement records, collateral release records, and termination documents." *Id*. at p. 4. But disclosure of such documentation would not change the outcome here. In other words, Cunningham has not demonstrated "how the additional time will enable him to rebut the movant's allegations of no genuine issue of fact." *Coleman v. Anco Insulations, Inc.*, 196 F. Supp. 3d 608, 611 (M.D. La. 2016) (quoting *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991)). The affidavit is replete with other examples, and the Court sees no need to address each of them separately considering that the Second Amended Complaint [105] is so inherently deficient.

*Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (quoting *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006)) (additional citation omitted).

Other than conclusory allegations, Cunningham has identified no duty that ServiceLink owed to him. As noted previously, ServiceLink contracted with Pentagon, and Cunningham has not identified any separate duty that ServiceLink owed to him. Additionally, he has not alleged a cognizable injury. As already addressed, ServiceLink made him whole as to any alleged financial burden resulting from the undisclosed tax lien due to his failure to pay his property taxes and subsequent redemption when it reimbursed him in the amount he paid for the taxes. He also references a clouded title and impairment of his property rights, but those allegations fail as a matter of law since he has not identified a legitimate cloud on his title.

Cunningham's negligence claim is fatally flawed. Count X of the Second Amended Complaint [105] is hereby DISMISSED.

X.  *Failure to Provide Accounting (Count XI)*

In Count XI, Cunningham asserts that Pentagon violated Mississippi Code Section 75-9-210 by failing to respond to a request for accounting. Specifically, Cunningham avers:

> 106.  On February 26, 2024, and March 28, 2024, Plaintiff submitted an accounting request to Defendant [Pentagon] pursuant to Mississippi Code § 75-9-210, which governs requests for an accounting of collateral.
>
> 107.  Defendant [Pentagon] failed to provide proper accounting as required by this statute.

*Id.* at p. 28.

Section 75-9-210 of the UCC sets forth a procedure pursuant to which a debtor can request certain information from a creditor about a secured obligation and the collateral. *See generally* MISS. CODE ANN. § 75-9-210. Under the statute, "[a] debtor is entitled without charge to one (1)

response to a request under this section during any six-month period." *Id*. at § 75-9-210(f).

In the Second Amended Complaint [105], Cunningham alleges that he made two accounting requests—specifically, on February 26, 2024 and March 28, 2024. Notably, though, he seemingly admits that Pentagon actually responded to a request for an accounting when, in another portion of the Second Amended Complaint [105], he alleges that "Plaintiff also discovered that the Deed of Trust had been unilaterally altered . . . *This unauthorized alteration was discovered through Plaintiff's statutory accounting request under Mississippi Code §75-9-210*." [105] at p. 12 (emphasis added).

Cunningham thus concedes that there was a response to his request for an accounting. To the extent that he contends that any response was otherwise improper or insufficient, the Second Amended Complaint [105] is devoid of sufficient facts to support the theory. His conclusory assertion that Pentagon "failed to provide proper accounting" is insufficient. Count XI is hereby DISMISSED.

XI.    *Unjust Enrichment/Restitution (Count XII)*

Cunningham's unjust enrichment claim is asserted against all Defendants and is essentially a combination of all of his other claims, as he alleges that the Defendants have been unjustly enriched based on the alteration of the deed of trust and utilization of the note as collateral.

At this point, the Court has addressed *ad nauseum* the inherent legal flaws in Cunningham's allegations. The Court sees no need to address those points any further but does note that an unjust enrichment claim is a quasi-contract claim that "applies only when a legal contract is nonexistent." *Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012). There is no applicable quasi-contract claim here.

Similarly, Cunningham has not plausibly alleged that any of the Defendants were actually

unjustly enriched in any way. Unjust enrichment occurs when "the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id*. Again, there are no *plausible* allegations that the Defendants have been unjustly enriched.

Count XII of the Second Amended Complaint [105] is DISMISSED.

## XII.    *Cloud on Title (Count XIII)*

In Count XIII, Cunningham asserts that he is "entitled to equitable relief from this Court, including an order directing the removal or cancellation of the altered Deed of Trust from the public record." [105] at p. 31.

Cunningham has not alleged a single viable claim. The request for equitable relief is meritless and therefore is hereby DISMISSED.

## XIII.    *Additional Matters*

The Court has addressed each of Cunningham's claims. In doing so, the Court has at times intertwined the Defendants' arguments while remaining cognizant that Pentagon, MERS, and National Title sought dismissal pursuant to Rule 12(b)(6) and ServiceLink sought dismissal pursuant to Rule 56. Of course, different legal standards are applicable under each of those Rules, and the Court has attempted to address the separate legal standards where appropriate. Nonetheless, the differences in those legal standards would not have changed the outcome as to any particular claim. In short, this lawsuit is inherently flawed and ripe for dismissal—regardless of whether the Court is considering the allegations of the Second Amended Complaint [105] alone or taking into account summary judgment type evidence.

Finally, the Court feels compelled to point out that Cunningham's Response [139] contains fabricated legal authorities.

On page 2 of that filing, he includes the following citation: "*See Housatonic Habitat for Humanity, Inc. v. Gen. Real Estate Holdings, LLC*, No. 3:13-cv-01888, 2014 WL 4384675 (D. Conn. Sept. 4, 2014) (finding such conduct 'misleading' and sanctionable)." [139] at p. 2. The Westlaw citation provided corresponds to an entirely different case from the District Court for the Middle District of Pennsylvania. This Court separately reviewed the docket for cause number 3:13-CV-01888 for the District Court of Connecticut and located the *Housatonic* case; however, there was no docket entry whatsoever on September 4, 2014, as Cunningham's representation in his filing would indicate.

Additionally, on the following page, Cunningham cites *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), and attributes the following quote to that case: "If the nonmoving party has not had an opportunity to discover information that is essential to his opposition to the motion for summary judgment, the court should either deny the motion or order a continuance to permit the nonmoving party to obtain the necessary discovery." [139] at p. 3. Although the case citation that Cunnigham provided corresponds to an existing case, there is no such quotation located within the case.

Since Cunningham's entire lawsuit is inherently flawed for the reasons addressed at length herein, the Court will not expend much time addressing this issue at this juncture. But it does note that the submission of fictitious legal authorities, even by a *pro se* litigant, violates Rule 11 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 11(b); *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881-82 (N.D. Miss. Apr. 16, 2025) (sanctioning *pro se* litigant for citing nonexistent cases).

Since the Court intends to dismiss this case and the Defendants have not sought attorney's fees or any other sanctions in connection with Cunningham's improper citations, the Court will

take no further action at this time. However, the Court takes this opportunity to specifically advise Cunningham that, should he choose to file an additional lawsuit that is assigned to the undersigned or should he take any further action in this litigation, such conduct will not be tolerated. This is a serious matter that this Court does not take lightly. Sanctions *will* be imposed for any additional Rule 11 violations.[5]

*Conclusion*

The Motions to Dismiss [109, 111] and Motion for Summary Judgment [137] are GRANTED. Cunningham's claims against Pentagon, MERS, National Title, and ServiceLink are hereby DISMISSED *with prejudice*.[6]

As referenced previously, Cunningham's Second Amended Complaint [105] and his other filings in this case are far from a model of clarity. The Court has attempted to construe all allegations in his favor and give him the benefit of the doubt when possible. However, any arguments not specifically addressed herein would not have changed the outcome.

A Final Judgment will issue this day. This CASE is CLOSED.

SO ORDERED this the 7th day of January, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The Court also notes that after ServiceLink (in its Reply [141]) pointed out these citation errors in Cunningham's Response [139], Cunningham's proposed sur-reply attempts to circumvent responsibility by referring to the citation to a nonexistent opinion as a typographical error in the Westlaw citation and by remaining adamant that the fake quote actually does exist in the *Rally's* case. *See* [142], Ex. 1 at p. 3-4. The fact remains, though, that there was no docket entry whatsoever on September 4, 2014 in the *Housatonic* case. And the Court, like ServiceLink's counsel, was unable to locate the quote in the *Rally's* case. Regardless, this Court is taking no further action against Cunningham on this issue but instead cautions him as to future conduct in any litigation in which he is involved.

[6] Cunningham's Motion for Leave to File Supplemental Memorandum [123], Motion to Strike [125], Motion for Leave to File Notice of Errata and Corrected Legal Authority [126], and Motion for Leave to File Sur-Reply [142] shall be TERMINATED. However, the Court notes that, in reaching its conclusion herein, it considered the substance of the supplemental memoranda attached to those filings. In other words, the Court considered all documentation Cunningham provided. National Title's Motion for More Definite Statement [132] is DENIED AS MOOT.